UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN MILNER,
　　*Plaintiff*,

　　v.                                              No. 3:20-cv-01245 (JAM)

NED LAMONT *et al.*,
　　*Defendants*.

**ORDER DENYING MOTIONS FOR
TEMPORARY RESTRAINING ORDER**

　　Shawn Milner is an unsentenced prisoner in the custody of the Connecticut Department

of Correction ("DOC"). He has filed an amended complaint *pro se* under 42 U.S.C. § 1983

against some thirty persons, the Governor of Connecticut, a mix of DOC officials, medical

practitioners, and other state officials, all in their individual and official capacities for damages

and injunctive relief.[1] Milner principally alleges that the defendants have been deliberately

indifferent to his safety and medical needs by denying him medical treatment and not complying

with COVID-19 guidelines from the DOC and the Center for Disease Control ("CDC").[2]

　　Milner has now moved for a temporary restraining order in connection with his claims,

seeking an order requiring the DOC to provide him with medical care and to preserve certain

video footage.[3] Milner argues that he suffers from "life-threatening COVID-19 needs," including

---

[1] Doc. #5 at 1. Milner has also filed a motion to leave to proceed *in forma pauperis*. In light of Milner's claims of life-threatening illness, I provisionally granted his motion. Docs. #18, #20.

[2] *Id.* at 3-31. Milner was previously incarcerated at Northern Correctional Institution and has more recently been transferred to MacDougall-Walker Correctional Institution. He has yet to file a change of address with the Court and is instructed to promptly do so.

[3] Doc. #17 at 1. After filing his initial motion on February 4, 2021, Milner filed a second motion for temporary restraining order on March 17, 2021, and then a third motion on July 19, 2021. *See* Docs. #32, #68. The motions substantially overlap, and so I will consider them together.

swelling in his neck and head, and that the defendants "have been intentionally not treating" and

retaliating against him for requesting medical care.[4]

As reflected in the docket, the Court entered an order appointing *pro bono* counsel for

Milner in light of the gravity of his stated medical concerns and his insistence that these concerns

were being ignored.[5] But then Milner refused to cooperate with his appointed counsel and moved

to "waive" counsel.[6] The Court granted this motion and his appointed counsel's corresponding

motion to withdraw due to Milner's refusal to speak with and cooperate with his counsel.[7]

The Court entered an order for the defendants to file a response to Milner's request for

temporary injunctive relief. The defendants have filed an opposition accompanied by more than

4,000 pages of Milner's medical records.[8]

Both a temporary restraining order and a preliminary injunction are extraordinary

remedies for which a plaintiff ordinarily bears the burden to show (1) irreparable harm, (2) a

likelihood of success on the merits or a sufficiently serious question going to the merits and a

balance of hardships tipping decidedly in the plaintiff's favor, and (3) that the public interest

weighs in favor of granting an injunction. *See, e.g.*, *Metro. Taxicab Bd. of Trade v. City of New

York*, 615 F.3d 152, 156 (2d Cir. 2010). Where, as here, a prisoner seeks a mandatory injunction

that would require a change in the status quo, it is not enough for the prisoner simply to show

that there are serious questions at issue; instead, the prisoner must meet the more rigorous

standard of showing a clear or substantial likelihood of success on the merits. *See Johnson v.*

---

[4] Doc. #17 at 1.
[5] Doc. #21.
[6] Doc. #31. I do not credit Milner's allegation that his appointed counsel had "severe conflicts of interest" or engaged in "verbally assaultive" conduct of telling him to "'shut up' and to 'jump in a lake' simply for requesting medical care." Doc. #31 at 1.
[7] Doc. #41.
[8] Docs. #56, #57.

*Connolly*, 378 Fed. Appx. 107, 108 (2d Cir. 2010); *Rodriguez v. McCormick*, 2021 WL 3115981, at *3 (D. Conn. 2021).

Because Milner is a pre-trial detainee, his claims for deliberate indifference to his serious medical and safety needs are subject to review under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). The Fourteenth Amendment due process clause protects the rights of pretrial detainees against intentional or deliberate indifference to their serious medical needs or unsafe conditions of confinement. In order to establish such a claim, a plaintiff must show that: (1) his conditions of confinement *objectively* "post an unreasonable risk of serious damage to his health," and (2) the official *subjectively* "acted intentionally to impose the alleged condition, or recklessly failed to act with the reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 30, 35; *see also Charles v. Orange Cty.*, 925 F.3d 73, 86-87 (2d Cir. 2019) (applying same two-part objective/subjective standard to detainee's claim for deliberate indifference to serious medical needs under the Fourteenth Amendment).

Milner alleges that he has tested positive for the COVID-19 virus, is symptomatic, and is medically vulnerable to COVID-19 because he is epileptic.[9] He alleges that he suffers from loss of sense of smell and taste, has "sustained extensive and ongoing neurological, neurotropic, and neuroinvasive [*sic*] COVID-19 near fatal complications such as seizures, convulsions, changes in mental status and has several broken bones."[10] Milner further alleges that he has swollen gums, a swollen throat, and an ulcer in his mouth.[11]

---

[9] Doc. #5 at 5, 8, 12 (¶ 10); Doc. #64 at 1.
[10] Doc. #5 at 8.
[11] *Ibid.*

I will assume that Milner has alleged facts to show that he suffers from medical conditions sufficient to satisfy the objective prong of the Fourteenth Amendment standard for deliberate indifference. Nevertheless, the facts do not adequately establish that any of the defendants recklessly disregarded a substantial risk to Milner's health because there is no evidence in the record that any of the defendants denied him treatment or are retaliating against him for requesting medical treatment. To the contrary, Milner's extensive medical record reflects that Milner has repeatedly declined to accept the medical care offered him.

First, Milner's medical records belie his allegations that the DOC is not treating his hand fractures. On March 15, 2020, Milner complained that he had a broken finger.[12] The next day, a DOC medical provider examined his hand.[13] Although the DOC medical provider scheduled an X-ray of his hand, Milner refused to come to medical for the X-ray.[14] A few days later, a DOC nurse met with Milner to discuss his refusal to have the X-ray, at which point Milner showed the nurse his hand and complained that it was broken and "[n]o one is doing anything about it."[15] The hand was not visibly broken.[16]

A couple months later, Milner was admitted to an outside emergency room due to a seizure and complained of hand pain in his right thumb and left index finger.[17] The index finger had a "small non-displaced fracture," which was treated with a splint.[18] The medical record notes that "no further medical intervention is needed at this time" for the fracture and that it "should heal up without any difficulty."[19]

---

[12] *Id.* at 1588.
[13] *Id.* at 1808.
[14] *Id.* at 1173, 1808.
[15] *Id.* at 1768.
[16] *Ibid.*
[17] *Id.* at 1638, 1594.
[18] *Id.* at 1594.
[19] *Id.* at 1594, 1642.

A few weeks later, Milner asked prison medical staff to re-splint his ring finger, but staff did not do so because it was already splinted.[20] Several days later, Milner's left wrist was X-rayed at an outside hospital.[21] The radiology report noted that there was "[n]o acute fracture or dislocation," "[a]lignment appears intact," "[n]o significant degenerative changes," "[n]o focal soft tissue swelling," and "[n]o abnormal soft tissue mineralization."[22]

Months later, on December 14, 2020, Milner complained that his "finger is broken, see how the bone is sticking out," but refused to have it evaluated by DOC staff.[23] Then, on April 26, 2021, Milner complained that his right wrist was broken from handcuffs, but there was no visible bruising or swelling.[24]

Milner's medical records also reflect that he has repeatedly been offered treatment for a gum abscess but refuses to follow the recommendations of DOC medical staff and medical providers from outside hospitals. On June 17, 2020, Milner complained that his "gums [were] killing him" and showed a DOC nurse a "small bulging" area on his left gumline.[25] Two days later, a DOC medical provider examined Milner, noted that Milner had "1 cm abscess on left side of lower gums," and prescribed the oral antibiotic bactrim and over-the-counter pain medication.[26] DOC medical staff later prescribed Milner amoxicillin "for better coverage of oral bacteria" and made a referral to dental.[27] Staff noted that Milner was in COVID isolation and "hope[d]" he would accept the amoxicillin but Milner "ha[d] been refusing meds."[28]

---

[20] *Id.* at 1504.
[21] *Id.* at 4326.
[22] *Id.* at 1478.
[23] *Id.* at 2264.
[24] *Id.* at 4096.
[25] *Id.* at 1561.
[26] *Id.* at 1556.
[27] *Id;* at 1555.
[28] *Ibid.*

When Milner continued to complain of gum problems in subsequent months, the DOC repeatedly continued to attempt to treat him. On November 19, 2020, Milner was examined at the emergency department at John Dempsey hospital for his gum abscess.[29] A physician and physician assistant examined Milner and recommended "blood work and CT to further assess the growth/gingival swelling in his mouth."[30]

But Milner refused the CT and bloodwork "without an MRI of his brain."[31] The medical providers at John Dempsey explained to Milner that an MRI was not needed because he had "no acute focal neurologic deficits" or "recent seizure-like activity" and that if he refused the CT and bloodwork at the emergency department, he would be sent back to the DOC without any type of work-up.[32] Milner "verbalized understanding" but still refused the CT and bloodwork.[33]

The gum abscess did not clear up. On November 22, 2020, Milner showed the abscess on his gum to a DOC nurse, who explained that he needed to take antibiotics to treat it.[34] Milner responded that he thought the "infection in his mouth is more of a brain condition related to Covid."[35] Days later, Milner complained again of the abscess on his left lower gum but again refused to take the antibiotics prescribed to him to treat the abscess.[36]

On November 29, 2020, a DOC nurse examined Milner and observed that Milner had a "[r]aisin sized" abscess in left lower gum.[37] The nurse educated Milner on the "danger of non-compliance with antibiotics…with consequence leading up to death." [38]  In response, Milner

---

[29] *Id.* at 580-88.
[30] *Id.* at 583.
[31] *Id.* at 586-87.
[32] *Ibid*.
[33] *Id.* at 587.
[34] *Id.* at 2623.
[35] *Ibid.*
[36] *Id.* at 2605, 2613.
[37] *Id.* at 2509.
[38] *Id.* at 2509.

requested an EEG and MRI.[39] The nurse responded that the EEG and MRI were not necessary to

treat the gum abscess.[40]

In early December 2020, a DOC medical provider noted that Milner had "extensive

dental caries and a dental abscess" but he was not taking the prescribed antibiotic for the gum

inflammation.[41] When a DOC nurse attempted to administer medication, Milner "threw milk" at

the nurse and then refused to communicate with the nurse.[42] Later that month, DOC medical staff

examined Milner for a gum infection and again provided him with antibiotics and educated him

on the importance of taking the antibiotics.[43] The expected outcome is that Milner will be "free

from sepsis" if he takes the antibiotics.[44]

Consistent with his allegations that he has had COVID-19, Milner's medical records

reflect that he tested positive for COVID-19 on June 11, 2020.[45] But although Milner also alleges

that he is at risk for severe COVID-19 because he is epileptic and because the DOC has not been

treating him for COVID-19 symptoms or complications, a few days after the positive diagnosis,

Milner refused to have his vital signs checked to monitor the progression of his symptoms.[46] He

also continued to refuse COVID assessments, which includes monitoring of his oxygen

saturation levels, lungs, and temperature, throughout the month of June.[47] Rather than declining

to take his COVID-19 diagnosis seriously, the record shows that DOC medical staff continued to

---

[39] *Ibid.*
[40] *Ibid.*
[41] *Id.* at 2429.
[42] *Id.* at 2429.
[43] *Id.* at 2346, 2262.
[44] *Id.* at 2432.
[45] *Id.* 1673.
[46] *Id.* at 1667.
[47] *Id.* at 1506, 1526, 1535, 1544, 1546, 1550, 1553, 1556, 1561, 1562, 1565, 1595,

monitor Milner's potential COVID-19 symptoms even though he refused a formal assessment,

and staff documented in Milner's medical record whether he had a cough or other symptoms.[48]

Milner further alleges that the defendants are not treating him for neurological

complications from COVID-19, but in March 2021 he refused to attend a neurological

appointment.[49] Milner also alleges that he is concerned that he is at risk for severe COVID-19

because he is epileptic, but when offered the COVID-19 vaccine in February 2021, he declined

to be vaccinated.[50] "The federal judiciary need not accept a prisoner's self-diagnosed skepticism

about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the

responsible agencies all deem vaccination safe and effective." *United States v. Broadfield*, 2021

WL 3076863, at *2 (7th Cir. 2021).

As documented in his medical records, Milner takes medication for seizures that predate

his COVID-19 diagnosis.[51] His medical records also document that DOC medical staff have

recommended drawing his blood regularly to monitor the medication levels.[52] But since his

admission to DOC custody in February 2020, Milner has occasionally not complied with taking

his medication or refused to have his blood drawn, resulting in DOC medical staff discontinuing

the seizure medication in March 2020 because they felt it was unsafe to administer the seizure

medications absent measuring his blood levels.[53] When Milner asked that the medication be

resumed in May 2020, DOC again prescribed him the seizure medication.[54] It appears from the

medical records that Milner still periodically refuses to have his blood drawn, but that as of

---

[48] *See, e.g., id.* at 82, 84, 90, 91, 100, 102, 104, 108, 113, 4277, 4286, 4326, 4326,
[49] *Id.* at 4273-76.
[50] *Id.* at 71, 75.
[51] *Id.* at 1939.
[52] *Id.* at 1773, 1799.
[53] *Id.* at 1768.
[54] *Id.* at 1722.

January 2021 he is still taking the anti-seizure medication.[55] Because the DOC is offering Milner

medical care for his seizures and he is taking the medication, it is not clear what—if any—

further medical treatment for his seizures that Milner is demanding.

Milner mentions in his amended complaint a desire to have hydroxychloroquine or

remdesivir to treat COVID-19, and his medical records are replete with requests for an MRI. To

the extent that Milner alleges that the defendants have been deliberately indifferent to his health

because they did not offer him the treatment of his choice, this argument overlooks the principle

that an inmate does not have a constitutional right to the treatment of his choice so long as the

offered treatment is adequate. *See Hill v. Cucione*, 657 F.3d 116, 123 (2d Cir. 2011).

Milner does not allege—and the record does not support—even an allegation of medical

malpractice or disagreement among Milner's many medical providers about the proper course of

treatment. Although Milner disagrees with the treatment offered him, he cannot show that his

medical providers have recklessly disregarded a substantial risk to his health. To the contrary, the

medical records show that his treatment team has reached a conclusion about the course of

treatment for his many ailments, warned him in the case of his gum abscess that failure to follow

their recommendations could be fatal, but that Milner has decided not to follow their

recommendations. *See ibid.* (affirming dismissal of complaint where facts equally consistent

with reasonable difference of medical opinion or medical negligence as deliberate indifference);

*cf. Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) (genuine issue of fact as to deliberate

indifference where "defendants reflexively applied [prison] policy in the face of *unanimous,*

*express, and repeated*—but contrary—recommendations of plaintiff's treating physicians"

(emphasis added)).

---

[55] *Id.* at 209, 1629.

The DOC has offered Milner a COVID-19 vaccine, which the medical community has concluded is the most effective treatment at preventing serious illness from COVID-19. *See United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. 2021) (discussing the efficacy of the COVID-19 vaccine and collecting decisions have declined to issue sentence reductions where inmates have refused the vaccine). Given that the DOC has repeatedly attempted to treat Milner's gum abscess and fractures, and has even offered Milner the most effective treatment to prevent contracting severe COVID-19, Milner has not alleged facts to plausibly show deliberate indifference to his medical needs.

In response to the overwhelming evidence in his medical record that he has not been denied treatment, Milner responds that the defendants have falsified the evidence.[56] Milner argues that the Court should preserve certain video footage because it is "needed for direct proof" to show that he has requested and been denied medical care.[57] Milner also expands on the allegations in his amended complaint that defendants have responded to his requests for medical treatment with physical assault, threats, and sexual assault.[58] The falsification and retaliation allegations are conclusory at best. Milner only generally states that the defendants are denying him medical care and lying about offering him treatment but without informing the Court specifically which treatment they are lying about or which requests have resulted in assault and by which defendants. Similarly, Milner has failed to convincingly show how the requested video recordings of alleged denial of treatment or abuse will disprove the thousands of pages of medical records.

---

[56] Doc. #32 at 2; Doc. #64 at 1.
[57] Doc. #32 at 2.
[58] Doc. #64 at 2.

All in all, Milner has not shown a clear or substantial likelihood of success with respect to his claim of deliberate indifference to his serious medical needs under the Fourteenth Amendment. The medical records show that adequate medical treatment has been offered but that Milner has refused treatment time and again.

CONCLUSION

The motions for a temporary restraining order (Docs. #17, #32, #68) are DENIED. It is so ordered.

Dated at New Haven this 27th day of July 2021.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge